FAYETTE COUNTY BOARD OF
EDUCATION, Appellant,

v.

M.R.D., by and through His
Next Friends, K.D. and
K.D., Appellees.

No. 2003–SC–0448–DG.

Supreme Court of Kentucky.

March 17, 2005.

Robert L. Chenoweth, Chenoweth Law Office, Frankfort, William H. Fogle, Fogle

& Maze, PSC, Mt. Sterling, Counsel for Appellant.

Edward E. Dove, Lexington, Counsel for Appellees.

JOHNSTONE, Justice.

This matter was initiated on behalf of Appellee, M.R.D., for a due process hearing against Appellant, Fayette County Board of Education (FCBE). At the heart of this matter is the assertion that the FCBE failed to provide adequate educational programming to M.R.D., a learning disabled student. A due process hearing was conducted, after which the hearing officer ruled largely in the FCBE's favor, granting only minimal relief to M.R.D. based on a single procedural error. That decision was appealed to the Exceptional Children Appeals Board (ECAB), which affirmed the decision of the local hearing officer in its entirety. M.R.D. then initiated a civil action in Fayette Circuit Court; the circuit court affirmed the ECAB decision. M.R.D. sought review by the Court of Appeals. Conducting a modified de novo review of the case, the Court of Appeals reversed, finding that the FCBE had not provided M.R.D. adequate educational programming and ordering that the cost of his private education be reimbursed. This Court granted discretionary review. Because it applied the wrong standard of review in this matter, we reverse the decision of the Court of Appeals and reinstate the judgment of the Fayette Circuit Court.

**Factual and Procedural Background**

M.R.D. was formally diagnosed with a learning disability in 1993, during his fourth grade year in Fayette County Schools, and determined eligible for special education services. Consequently, an individualized educational plan (IEP) was developed to address M.R.D.'s educational needs for his fifth grade year. Over the next four academic years—that is, M.R.D.'s fifth through eighth grade years—M.R.D.'s IEP was annually revised. For some years M.R.D. was educated in the regular education classroom with supplemental services provided. Other years he was pulled out of the regular education classroom to receive additional help in the school's resource room. For at least one year, M.R.D. was in the resource room full-time. The record reflects that M.R.D.'s parents were conscientious in their involvement in his education, and regularly requested and attended meetings with his teachers. The evidence also reveals that the school conducted annual reviews of both M.R.D.'s progress and his IEP as required by law. Finally, it should be noted that M.R.D.'s parents obtained extensive outside assistance for their son during these years in the form of private tutoring, speech therapy, and summer educational programs.

Though an IEP had been developed at the end of M.R.D.'s eighth grade year for the following school year, his parents decided instead to enroll M.R.D. in the GOW School, a private, residential education facility in New York. M.R.D.'s parents did not seek the FCBE's approval for this placement. However, during his ninth grade year at the GOW School, M.R.D.'s parents consented to a re-evaluation for special education services in the hopes that he might return to Henry Clay High School in Fayette County. The FCBE sent a speech and language therapist to the GOW School to gather data, and several meetings of the Admissions and Release Committee were held to develop a revised IEP. The FCBE specifically rejected the GOW School as the appropriate placement for M.R.D. M.R.D.'s parents, however, were not satisfied with the results of these meetings, and determined that the GOW School was the proper placement for M.R.D. He remained enrolled in the GOW School for the remainder of his high school years.

M.R.D.'s parents then initiated this action by requesting an administrative due process hearing to address issues surrounding M.R.D.'s education. The request was based upon the following allegations: (1) that the FCBE had failed to provide M.R.D. with a free and appropriate education, required by federal and Kentucky law; (2) that the FCBE had failed to develop an appropriate IEP; (3) that the FCBE had failed to timely identify M.R.D.'s disability; and (4) that the FCBE had failed to conduct timely evaluations and to provide related services. M.R.D.'s parents requested both compensatory educational services and reimbursement for the costs associated with M.R.D.'s enrollment at the GOW School. The local hearing officer ruled in favor of the school district, concluding that, under relevant case law, M.R.D. had been afforded a free and appropriate education and that his IEP provided adequate educational opportunities. As such, M.R.D.'s requests for compensatory education and for reimbursement of private school tuition and related costs were denied.

M.R.D.'s parents sought review by the Exceptional Children Appeals Board, raising three issues: (1) whether M.R.D. had been provided a free and appropriate education by Fayette County Schools; (2) whether M.R.D.'s parents were entitled to reimbursement for the cost of sending M.R.D. to the GOW School; and (3) whether M.R.D.'s parents had missed the limitations period in requesting reimbursement for expenses. The ECAB affirmed the decision of the local hearing officer in its entirety, and again denied M.R.D.'s request for reimbursement.

An appeal from the ECAB's opinion was filed in Fayette Circuit Court. The Fayette Circuit Court concluded that the decision of the ECAB was supported by substantial evidence in the record, and affirmed. M.R.D. next sought review by the Court of Appeals. Relying on federal case law interpreting the Individuals With Disabilities Education Act (IDEA), the Court of Appeals conducted a modified de novo review of the record; that is, the court independently re-examined the evidence to determine whether the administrative decision was correct. The Court of Appeals concluded that the FCBE had not complied with IDEA in providing educational programming to M.R.D., and ordered that his parents be reimbursed for the expenses incurred in sending him to the GOW School. This Court granted discretionary review.

**Background of Relevant Law**

■ The Individuals with Disabilities Education Act (IDEA) provides federal funds to assist state and local educational agencies in educating disabled children.[1] The award of these funds is predicated on the state's compliance with certain goals and procedures. The Kentucky General Assembly has enacted a number of statutes to implement the IDEA requirements.[2]

■ Both the IDEA and the corresponding Kentucky regulations require schools to make available to disabled children a "free and appropriate education" (FAPE).[3] The primary vehicle for delivery of a FAPE is the development and implementation of an IEP.[4] The IEP is a written document developed by the child's parents, the child's teachers, and local

---

1. 20 U.S.C. §§ 1400 et seq.

2. KRS 157.224; 707 KAR 1:280 et seq.

3. 20 U.S.C. § 1412(a)(1)(A) (2000); 707 KAR 1:290.

4. 20 U.S.C. § 1414(d) (2000); 707 KAR 1:320.

school division representatives, in which the specific educational services to be provided, the annual goals, and the objective criteria for evaluation are delineated.[5] A central tenet of the IDEA is the belief that disabled children should be taught with non-disabled children to the maximum extent possible; this belief is expressed in the IDEA's requirement that the disabled child be placed in the "least restrictive environment" (LRE) consistent with the child's needs.[6]

Procedural safeguards exist for the benefit of the student. Under the IDEA, parents who complain about the adequacy of their child's IEP may request a due process hearing to be conducted by the local educational agency.[7] Appeal of this decision may be taken by the state educational agency, which is required to conduct an impartial review of the local educational agency's decision.[8] In Kentucky, a local hearing officer conducts this initial due process hearing, which may then be appealed to the Exceptional Children Appeals Board.[9] The IDEA mandates that, after exhausting the state's administrative procedures, the parents may bring a civil suit in either federal district court or in a state court "of competent jurisdiction."[10] Kentucky law requires the appeal be taken to the circuit court.[11]

**Standards of Judicial Review in IDEA actions**

Though Kentucky regulations provide that a decision of the ECAB may be appealed to either state circuit or federal district court, the regulation is silent as to the type of review to be conducted by this initial reviewing court. Corresponding federal regulation, however, is more detailed: IDEA requires that this initial reviewing court (whether federal or state) review the records of the administrative proceedings, hear additional evidence if requested by a party, and base its decision on the preponderance of the evidence.[12] The Fayette Circuit Court in this matter conducted its review pursuant to KRS 13B.150, and relied on the long line of Kentucky cases stating that circuit courts review decisions of administrative agencies to determine whether they were supported by "substantial evidence."[13] Though the FCBE had previously raised the issue of whether the federal standard of review as set forth in 20 U.S.C. § 1415(i)(2)(B) was inconsistent with the type of judicial review required by Kentucky law, that claim was abandoned and is not now before us for determination.

What remains as the primary issue for our consideration is whether the Court of Appeals applied the correct standard of review in considering M.R.D.'s appeal. At the outset of its opinion, the Court of Appeals states that it is required to review the case pursuant to a "modified de novo review" of the entire administrative record. Citing *Renner v. Schools of Ann*

---

**5.** *Id.*

**6.** 20 U.S.C. § 1412(a)(5)(A) (2000).

**7.** 20 U.S.C. § 1415(f) (2000).

**8.** 20 U.S.C. § 1415(g) (2000).

**9.** 707 KAR 1:340 § 7 and 707 KAR 1:340 § 8.

**10.** 20 U.S.C. § 1415(i)(2) (2000).

**11.** 707 KAR 1:340 § 8(2).

**12.** 20 U.S.C.A. § 1415(i)(2)(B) (2000).

**13.** *See e.g. Jones v. Cabinet for Human Resources,* 710 S.W.2d 862, 866 (Ky.App.1986) ("When substantial evidence exists in the record to support an administrative agency's action, the circuit court has no authority to overturn it.")

*Arbor*,[14] the Court of Appeals explains that it must "independently re-examine the evidence to determine whether the administrative determination and the circuit court decision affirming it were correct." The Court of Appeals' reliance on *Renner* for the correct standard of judicial appellate review in IDEA actions is misplaced.

As explained above, IDEA requires that the initial reviewing court review the records of the administrative proceedings, hear additional evidence if requested by a party, and base its decision on the preponderance of the evidence.[15] It is *this* standard of review that the U.S. Supreme Court, in *Bd. of Ed. Hendrick Hudson Dist. v. Rowley*, interpreted as a "modified de novo review."[16] *Rowley* and its progeny make clear that the modified de novo review is to be conducted by the initial reviewing court in IDEA actions.[17] The Court of Appeals in this matter, however, is not the initial reviewing court—the Fayette Circuit Court was the initial reviewing court.

The IDEA is silent as to the manner of judicial review to be conducted at the appellate level, and we must therefore look to prevailing state law on the matter. CR 52.01 requires that, in appeals of administrative agency decisions, appellate courts review the determinations of the circuit courts for clear error.[18] It should be noted that the federal appellate courts apply the same standard of review in IDEA actions: in reviewing a district court's ruling in an IDEA action, a clearly erroneous standard of review is applied to findings of fact, while conclusions of law are reviewed de novo.[19] Thus, the Court of Appeals erred in conducting a modified de novo review of the decision of the Fayette Circuit Court in this matter. The Court of Appeals should have reviewed the lower court's findings of fact only for clear error pursuant to CR 52.01 and reviewed its conclusions of law de novo.

### Application of the Standard of Review

M.R.D. argues that he was denied the free and appropriate education (FAPE) guaranteed by the IDEA and Kentucky law. Specifically, M.R.D. claims that the school failed to provide an appropriate IEP, which operated to deny him the required FAPE. M.R.D. further asserts that the GOW School was the appropriate placement for M.R.D. and that M.R.D.'s parents are entitled to reimbursement for their costs in sending M.R.D. to the GOW School. The Fayette Circuit Court concluded that substantial evidence was present in the record to support the ECAB's finding that "some educational benefit" was conferred to M.R.D., that he was progressing academically, and that the proposed IEP was formulated to provide a free and appropriate education. The ECAB decision was affirmed in its entirety.

*Was M.R.D. provided a free and appropriate education?*

The IDEA and corresponding Kentucky regulation entitle disabled stu-

14.  185 F.3d 635, 642 (6th Cir.1999).

15.  20 U.S.C. § 1415(i)(2)(B) (2000).

16.  458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690, 712 (1982).

17.  *See e.g. McLaughlin v. Holt Public Schools Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003).

18.  *See also Johnson v. Galen Health Care, Inc.*, 39 S.W.3d 828, 833 (Ky.App.2001) ("Our task is to determine whether or not the circuit court's findings upholding the Cabinet are clearly erroneous.")

19.  *McLaughlin*, 320 F.3d at 669. *See also Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 850 (6th Cir.2004).

dents to a free and appropriate education (FAPE).[20] The U.S. Supreme Court has explained that a FAPE "consists of education instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction."[21] The IDEA does not charge the school district, however, with the obligation to maximize each student's potential; rather the IDEA requires only that the school district provide a "basic floor of opportunity," "sufficient to confer some educational benefit upon the handicapped child."[22] The IDEA's "basic floor of opportunity" is achieved, in part, through the establishment of an IEP pursuant to 20 U.S.C. § 1401(a)(18)(D). The IEP must be reasonably calculated to provide some educational benefit to the handicapped child.[23]

■ Evidence in the record reveals that M.R.D. maintained a "B" grade average during the years at issue, and the ECAB's decision notes that no evidence was presented to indicate that M.R.D. was being "given" these passing grades. Further evidence was presented that M.R.D.'s IEP was properly reconsidered every year. M.R.D.'s fifth grade teacher testified that fifth grade was successful for him; a private expert secured by M.R.D.'s parents also noted M.R.D.'s progress during his fifth grade year and attributed this progress in part to the IEP. Though M.R.D.'s parents expressed dissatisfaction with his progress during sixth grade, M.R.D. was provided an IEP for that year

and was promoted to seventh grade. M.R.D.'s seventh grade teacher testified that M.R.D. was making educational progress during that year. M.R.D.'s eighth grade teacher gave similar testimony that M.R.D. had progressed on all of his IEP objectives for that year.

As both the Fayette Circuit Court and the ECAB noted, it is difficult to determine whether M.R.D. progressed due to the education provided by the FCBE, or due to the extensive private assistance procured by his parents. However, there is ample evidence in the record that M.R.D. was provided with the requisite "basic floor of opportunity" and that his IEP was reasonably calculated to confer educational benefit. In fact, the yearly revisions of M.R.D.'s IEP demonstrate a concerted effort to customize M.R.D.'s placement with his educational needs. Based on this and additional evidence indicating M.R.D.'s educational advancements during the years in question, we conclude that it was not clearly erroneous for the Fayette Circuit Court to determine that the FCBE was fulfilling its statutory duties in educating M.R.D.[24]

*Are M.R.D.'s parents entitled to tuition reimbursement?*

■ If the parents of a disabled student unilaterally place their child in a private program pending the outcome of the administrative and judicial review process, the parents may seek retroactive reimbursement for the educational expenses

**20.** 20 U.S.C. § 1412(a)(1)(A) (2000); 707 KAR 1:290.

**21.** *Bd. of Ed. Hendrick Hudson Dist. v. Rowley,* 458 U.S. 176, 188–89, 102 S.Ct. 3034, 3042, 73 L.Ed.2d 690, 701 (1982).

**22.** *Rowley,* 458 U.S. at 200, 102 S.Ct. at 3048, 73 L.Ed.2d at 708.

**23.** *Id.*

**24.** *See Louisville & Nashville R. Co. v. Kentucky Railroad Commission,* 300 S.W.2d 777, 779 (Ky.1956).

and related services under the IDEA.[25] However, the parents must prove not only that the public education offered violated IDEA, but also that the private school placement would satisfy the requirements of IDEA.[26] This burden is not met when the parents merely establish that the private school placement was superior to the services publicly provided; the parents must prove that the public school was unable to provide the appropriate education.[27]

Based on our discussion *supra,* the holding of the Fayette Circuit Court concluding that M.R.D. had been provided a free and appropriate education was supported by ample evidence in the record and therefore will not be overturned by this Court as clearly erroneous. As M.R.D. failed to establish that the FCBE did not provide him adequate educational programming, we need not discuss whether the GOW School could have provided him a FAPE under the IDEA. Therefore, the decision of the Fayette Circuit Court denying M.R.D.'s parents reimbursement for their expenses is affirmed.

**Conclusion**

For the foregoing reasons, the decision of the Court of Appeals is hereby reversed and the opinion of the Fayette Circuit Court is reinstated.

All concur.

---

**25.** *Babb v. Knox County Sch. Sys.,* 965 F.2d 104, 107 (6th Cir.1992), *cert. denied,* 506 U.S. 941, 113 S.Ct. 380, 121 L.Ed.2d 290 (1992).

**26.** *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

**27.** *Gillette v. Fairland Bd. of Educ.,* 932 F.2d 551, 554 (6th Cir.1991).