**Jan Marie AGNICH, Appellant**

v.

**LaDonna Kay TYLER, Appellee**

**NO. 2016-CA-000653-ME**

Court of Appeals of Kentucky.

MAY 5, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Anna L. Dominick, Lexington, Kentucky.

BRIEF FOR APPELLEE: Martha A. Rosenberg, Lexington, Kentucky.

BEFORE: KRAMER, CHIEF JUDGE; COMBS AND JONES, JUDGES.

## OPINION

JONES, JUDGE:

Jan Agnich appeals from an Order of the Fayette Circuit Court granting La-Donna Tyler's Motion to Modify Timesharing, permitting her to relocate with the parties' two minor children to another state. For the reasons set forth below, we vacate and remand for additional proceedings.

### I. BACKGROUND

Appellant, Jan Marie Agnich ("Jan"), and Appellee, LaDonna Kay Tyler ("La-Donna"), were in a committed same-sex relationship for thirteen years. During that time, they decided to begin a family together. After several rounds of in vitro fertilization, LaDonna became pregnant with twins, who were born on June 23, 2010, and are now six years old. The parties resided with the children in Jan's Lexington home as a family until May of 2015.

Just prior to the birth of the twins, both Jan and LaDonna signed Wills and related estate planning documents. In her Will, LaDonna specifically directed that Jan is to be the guardian of any children she may have. LaDonna's Will states: "I specifically do not want my parents . . . or my brother . . . to be the guardian of any minor child(ren) of mine." LaDonna also signed a "Nomination of Guardian for Estate and Person of a Minor Child" for both children,

expressing her desire for Jan to care for the children in the event she became unable to do so. The Nominations further stated that, in the event Jan could not care for the minor children, LaDonna designated Jan's sister.

In May 2013, both children were diagnosed with autism at Cincinnati Children's Hospital. After the diagnosis, the parties applied for and received a state Medicaid grant to provide caregivers for the children. Approximately a month later, Jan filed a Verified Petition for Custody. On that same day, LaDonna filed an Affidavit and Consent to Custody. The parties jointly decided and agreed upon this course of action to ensure Jan would have legal parental rights in the event any issues occurred later on in their relationship. An Agreed Final Order on Custody and Timesharing was entered on July 18, 2013. Therein, the court determined that awarding joint custody of the children to Jan and LaDonna was in the best interests of the minor children.

The parties also entered into a "Shared Custody Agreement" on August 21, 2013. The Agreement provides that the parties "intend this Agreement to guide a Court in determining our respective rights." The Agreement further provides that in the event the relationship ends, each party will share in the expenses for the minor children, and that they "agree that each of us will make a good faith effort to remain in the school district where the children are attending school until the youngest child completes high school."

In November 2014, the parties ended their romantic relationship. Thereafter, the parties participated in mediation, which resulted in their agreement to an equal timesharing schedule under which Jan had the children every Wednesday and Thursday and every other weekend. The parties

abided by their 2013 Shared Custody Agreement with regard to the sharing of expenses and maintaining equal timesharing. The issue of relocation was reserved for further discussion or order of the court. LaDonna moved out of Jan's home following the mediation agreement.

On August 10, 2015, LaDonna filed a "Motion to Modify Timesharing and Relocate the Minor Children Out of State" requesting to move to the St. Joseph, Missouri area. LaDonna included an affidavit with her motion. Therein, she averred as follows:

4. The Affiant is engaged to be married to her childhood sweetheart, Mike Gilmore, on April 2, 2016. It is the Affiant's desire to relocate with the children to the St. Joseph, Missouri area to be closer to her family and her fiancé. The Affiant is looking for a home to purchase in Missouri which would place the children in the Oak Grove Elementary School district, which is a new school, in a nice neighborhood and is able to accommodate the children's special needs, as both children are autistic. Oak Grove Elementary has specialized instruction for children identified with Autism, including picture exchange communication systems, discrete trial training, sensory integration, applied behavior analysis and a focus on language development. The school has designated teachers who specialize in teaching children with Autism.

5. During their partnership Jan worked at Toyota and Affiant worked as a licensed clinical social worker for the Home of the Innocen[ts]. Jan was required to work significant hours, including overtime hours in her position as a group leader. The Affiant's job and work hours were much more flexible and therefore Affiant was the parent who took time from work to care for the children when it was necessary to do so. Neither party has family in Lexington. All of Affiant's family is located in Missouri and Jan's family is located Illinois.

6. It is the Affiant's desire to obtain employment that will again provide flexibility so she can care for the children when a daycare provider is unavailable during work hours and she can rely on family to help with the children. The Affiant is currently seeking employment in the St. Joseph area and believes she will be able to obtain employment in the St. Joseph area and she believes she will be able to obtain employment in her field of expertise at a much higher salary than she is able to earn in Lexington.

7. It is the Affiant's belief that it is in the children's best interest that the children be allowed to relocate with the Affiant to Missouri. The Affiant is happy to work out a timesharing schedule that provides Jan with significant blocks of time with the children, including meeting in Illinois for Jan to see the children at her family's residence as well as assisting with travel to and from Kentucky.

(R. at 22-23).

Jan filed a response objecting to LaDonna's relocation request. Jan pointed to the parties' prior agreement in which they agreed that if their relationship terminated, neither party would move out of the children's school district without the consent of the other party. Jan also argued that because of the children's autism, the move would be particularly disruptive to them as well as to the bonds they had formed with her. Specifically, she stated that due to the children's autism, "it will be impossible for [her] to gain that bond back if she is only permitted timesharing on summers and during holidays."

The family court conducted a hearing on February 3, 2016. Several witnesses testi-

fied. Following the hearing, the court issued an order granting LaDonna's motion to modify timesharing to allow her to relocate the minor children out of state. In part, the family court's order provides:

3. The testimony presented provided two examples of two parents that are dedicated to the well-being of those children who have very special needs.

4. The Court finds these children are very special based upon the way the parties and witnesses have been able to describe what it is that they do, what they excel in, what they need help in and how the parties aid them in reaching the children's goals.

5. [LaDonna] has argued to this Court that she would like to relocate with the children to the St. Joseph/Kansas City area where she has family support in the area and her fiancé, Michael Gilmore. [LaDonna] has no family support in Kentucky. Neither [Jan] nor [LaDonna] are from Kentucky nor do they have any family in Kentucky. [Jan's] family is located in Illinois. [LaDonna] has testified that she has family in the Kansas City area that have experience with special needs children and have volunteered to assist her with the twins. [LaDonna's] brother, Dennis Ova, testified before this Court that he was previously employed by the Kansas Department of Family Services, had experience with disabled children, both professionally and personally. He indicated he would assist [LaDonna] in any way she needed upon her return to the Kansas City area, as well as other family members. Mr. Ova indicated he was scouting homes for purchase on [LaDonna's] behalf in the Kansas City area. [LaDonna's] fiancé testified that he loved the children, the children loved him and he was happy to assist in their support and care. He indicated that he had spoken to his boss about no longer traveling outside the state for his employment so he would be available to assist with the children. [LaDonna] researched and provided to the Court a number of services available in the State of Kansas, including special educational programs for children with autism. It is clear to this Court that there are a number of services and support groups available in Kansas as exhibited in [LaDonna's] Exhibits 1 through 5 that are not available in Lexington, Kentucky. It appears Kansas has Kentucky beat in specialized services and community support for disabled children.

. . .

8. This Court FINDS that [LaDonna] has provided proof by a preponderance of evidence that it is in the best interest of the children to grant [LaDonna's] motion to modify timesharing and allow [LaDonna] to relocate with the minor children to the Kansas City area.

. . .

14. While Kansas City is approximately a [ten-hour] drive away from Lexington, [Jan] shall be able to visit with the children through use of technology such as Facetime and Skype and each party should rely on utilizing these methods for communication with the children. [Jan] shall be granted timesharing with the children during the summer break and the parties will work together to divide the holidays between them. It is the hope of this Court that the level of cooperation exhibited by [LaDonna] will continue and [LaDonna] will make an effort to bring the children to Lexington for visits with [Jan] during the year as well. Equal timesharing between the parties shall continue until [LaDonna] relocates.

. . .

17. For the aforementioned reasons, this Court grants [LaDonna's] motion to modify timesharing and allow [LaDonna] to relocate to the St. Joseph/Kansas City area.

(R. at 202-06).

This appeal by Jan followed.

## II. ANALYSIS

■ At the outset, we must point out that we are dealing with a modification of timesharing as opposed to a modification of custody. Jan and LaDonna currently have joint custody of the twins. They do not wish to alter this status. "A modification of timesharing maintains the basic custodial framework agreed upon by the parties but changes the amount of time that each parent spends with the child within that framework." *Humphrey v. Humphrey*, 326 S.W.3d 460, 464 (Ky. App. 2010).

■ "A decision to establish a new residence for a child far across the country is of such great moment that, absent court approval, the decision must be made by both joint custodians." *N.B. v. C.H.*, 351 S.W.3d 214, 222 (Ky. App. 2011). Because LaDonna and Jan could not agree on relocation, the family court was tasked with making the decision for them.

■ Modification of timesharing is determined pursuant to KRS[1] 403.320(3). *See Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008). That statute provides: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." KRS 404.320(3). "[B]e-

tween joint custodians, and absent the non-primary residential parent's motion to modify timesharing, including naming her as primary residential parent, the relocating parent always bears the burden of proving relocation is in best interests of the child." *N.B.*, 351 S.W.3d at 226.

Our Supreme Court has explained that in modification cases,

[T]he [family court] judge has several factors to consider in making the determination of what the best interests of a child are, which are partially listed in KRS 403.270, but include all relevant *facts*. The basis for a modification decision is thus fact-driven rather than law-driven, because the legal standard is whether the relocation is in the best interests of the child, which is stated plainly in the statute. To review the judge's decision on appeal, it is important to know what facts the judge relied on in order to determine whether he has made a mistake of fact, or to even determine if he is right at law, but for the wrong facts. If a judge must choose between facts, it is clearly relevant which facts supported his opinion.

*Anderson v. Johnson*, 350 S.W.3d 453, 455 (Ky. 2011).

■ We have carefully reviewed the record in conjunction with the family court's order. Having done so, we conclude that the court failed to adequately address whether these children's best interests would actually be served by relocating with LaDonna. Based on the record, it is unclear whether LaDonna intended to relocate to Missouri or Kansas. LaDonna originally averred that she planned to relocate to St. Joseph, Missouri; however, during the hearing it appeared that she was looking for housing in the Kansas City, Kansas, area as well. This is problematic

1. Kentucky Revised Statutes.

because all of the evidentiary support the trial court relied on to support its conclusion is based on the theoretic availability of services in Kansas.

Even if we assume that LaDonna had unequivocally decided to relocate to Kansas at the time of the hearing, the Exhibits 1-5 referenced by the family court are too generalized to support a finding that moving to Kansas would be in the best interest of these children. Exhibit No. 1 is a printout for the Olathe School District, which is located Olathe, Kansas, approximately thirty minutes outside of Kansas City, Kansas. The printout describes "how a student is eligible for special education." As for the type of services offered, the handout states only that "if the student is determined to be eligible and in need of services, an Individualized Education Program ("IEP") is developed and special education can begin."[2] Exhibit No. 2 is entitled "Special Olympics" and appears to relate to Kansas. It describes the "Young Athletes" program for children ages 3-7 with intellectual disabilities to introduce them to the world of sports prior to the Special Olympics eligibility at age 8. Exhibit No. 3 is entitled "Community Resources." It lists various support groups and services for "individuals with disabilities" in the Kansas City, Kansas area. Some of these services indicate that the individual requesting assistance must be a resident of "Johnson County, Kansas." Exhibit No. 4 is a list of hospitals and urgent care centers in various Kansas cities, including Overland Park, Olathe, Shawnee Mission, and Kansas City. Exhibit 5 is a listing of different churches in Kansas that have programs for "special needs" persons in the Kansas City, Kansas area. Some of the programs do not accept children younger than 12, while others do not appear to have age restrictions. The churches listed appear to be of various denominations.

Jan argues that the family court ignored the largely undisputed evidence she submitted regarding the numerous special needs programs available in Kentucky— many of which the children are already receiving in Lexington. We agree. The family court did not compare the theoretic services LaDonna identified as being available in Kansas with the services available and currently being utilized by the children in Lexington, Kentucky. More problematic, there was no testimony that utilization of the services in Kansas would actually be more beneficial to the children.

Instead, the family court attempted to bolster its conclusions by finding that "Kansas has Kentucky beat in specialized services and community services for disabled children." This statement is too generalized to support a finding that relocation to Kansas (or Missouri) would be in these children's best interest. The theoretic availability of more services in one of the two states LaDonna was considering does not necessarily mean that the children will receive and benefit from those services. The testimony provided that the children receive special services at their current school. There are no findings to support a conclusion that the services they would actually receive if allowed to relocate would be more beneficial to their overall development, especially when obtaining those services would involve major (and fairly constant) disruptions to their lifestyles and living situations. "More and different" does not always equate to better.

Jan testified that the children have trouble forming and maintaining bonds. The family court concluded that any disruption in the bond between Jan and the children

---

2. This appears to be similar to Kentucky's process. See Fayette Cty. Bd. of Educ. v. M.R.D. ex rel. K.D., 158 S.W.3d 195, 200 (Ky. 2005).

could be alleviated by using technology such as Skype and Facetime. These are special needs children who were described as largely nonverbal. There is no evidence in the record to support the conclusion that this type of "communication" would allow the children to maintain the bond they have developed with Jan over time.

There was also no evidence to support that the children, as opposed to LaDonna, would receive more support by relocating. The testimony showed that a team of individuals assists in the daily care of the children in Lexington, Kentucky. The fact that LaDonna would have additional personal support from her family and her fiancé does not translate into a finding that the children would be more supported. A finding that the move is in LaDonna's personal interest is not the same as a conclusion that the children's interests will be benefited.

In sum, after much review, we conclude that the family court's findings do not support its ultimate conclusion that relocation is in the best interest of these children. Accordingly, we remand this action to the family court for further proceedings. In light of *Morgan v. Getter*, 441 S.W.3d 94 (Ky. 2014), on remand, we direct the family court to consider appointment of a *guardian ad litem* ("GAL") to represent the interests of the children. This is a difficult case. Given the special nature of autism, a GAL may be of some benefit in best advocating for these children. It may also be necessary for the family court to consider whether a medical or psychologi-

cal evaluation of these children could aid it in better understanding and identifying the needs of the children *vis-à-vis* the availability of services in differing locales as well as the likely impact this relocation might have on the children's overall development and parental bonds.[3]

### III. CONCLUSION

For the foregoing reasons, we vacate the Order of the Fayette Circuit Court permitting modification of the parties' timesharing agreement to allow relocation and remand this matter for additional proceedings consistent with this opinion.

ALL CONCUR.

---

3. Kentucky's Family Court Rules for Practice and Procedure provide:

> (1) The provisions of this section shall apply to all actions in which there are disputes regarding custody, shared parenting, visitation or support. (2) A parent or custodian may move for, *or the court may order*, one or more of the following, which may be apportioned at the expense of the parents or custodians: ... (b) Psychological evaluation(s) of a parent or parents or custodians, or child(ren); ... (e) Appointment of a guardian ad litem ... (f) Appointment of such other professional(s) for opinions or advice which the court deems appropriate; or, (g) Such other action deemed appropriate by the court."

FCRPP 6 (emphasis added).