RENDERED: DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0502-ME

CODY NEWHOUSER                                          APPELLANT

v.             APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 17-CI-00532

CAITLIN N. MCCLEESE                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, DIXON, AND MAZE, JUDGES.

COMBS, JUDGE: This case involves a custody dispute in which the father challenges a decision of the trial court to permit the mother of the parties' minor child to relocate to Ohio with the child. Appellant, Cody Newhouser (Cody), and Appellee, Caitlin N. McCleese (Caitlin), who did not marry, are the parents of one biological child, a daughter born in 2017. They share joint custody. The trial

court's October 23, 2019, Order in the underlying custody litigation provides as follows:

> The parties had previously entered an Agreed Order granting joint custody to both parents and the Respondent [Cody] having the child every other weekend and four hours on Tuesday and Thursday. [Cody] works for Marathon and works 28 days on and 28 days off. His mother, Katherine Newhouser, has taken care of the child most of the time historically and both parties agree that she should have time with the child currently. . . .
>
> The Petitioner [Caitlin] testified that she agrees to equal time. . . .
>
> IT IS HEREBY ORDERED that the parties continue to have joint custody of the child and share equally in the child with [Caitlin] having the child 4-days each week that [Cody] is working[,] with his mother receiving the child 3-days per week. When [Cody] is not working, then he shall receive the child 4-days each week and [Caitlin] shall receive the child 3-days.

(Emphasis original.)

In November 2020, Caitlin moved with the child to Dublin, Ohio, along with her boyfriend, Tyler, and their infant son who was born in 2020. They moved to Ohio because Tyler found better employment there. He leased an apartment in the same complex where Cody's mother lives.

On November 4, 2020, Cody filed a combined motion objecting to Caitlin's relocation, seeking relief, and asking for attorney's fees. Cody alleged that Caitlin had not informed him of her intent to relocate until the day she moved

without his consent or permission. Cody requested that he be awarded primary residential custody of the parties' daughter if Caitlin wishes to relocate.

Caitlin filed a response and explained that she and her companion had discussed the possibility of moving to the Columbus, Ohio, area for employment for some time before the move and that Cody was agreeable to such a move until it happened. Caitlin contended that it would be physically impossible for Cody to be primary custodian because he works on boats on the river and is gone for 28 days at a time. Caitlin requested permission to move with the child.

On March 16, 2021, the trial court conducted a hearing by Zoom. Cody testified. He currently resides in South Shore, Kentucky, and works for Marathon Petroleum as a deckhand on a tug boat, 28 days on and 28 days off. Cody cannot exercise his timesharing while he is on the boat. When he is at home, Cody exercises timesharing four days per week. Cody testified that Caitlin had recently moved to Columbus and that he had filed an objection in November 2020. According to Cody, Caitlin did not request his or the court's permission, and she notified him the day of the move.

Cody testified that when the child starts school,[1] his timesharing will be restricted because the drive from Columbus, Ohio, to his home takes about two and one-half hours. Cody opined that it would be another year or two before the

---

[1] The parties' child was three years of age at the time of the hearing and was not in school.

child can start kindergarten. Cody's parents and some uncles live in Columbus. Caitlin has family in the Greenup County, Kentucky, area. Cody explained that he was asking the court either to order that the child move back to the Greenup County area or to designate him as the primary custodian. If the court were to designate him as primary custodian, Cody's girlfriend or her parents would care for the child when he could not. Cody testified that he takes medication for depression. He also testified that problems had arisen between his mother and him that caused additional concerns about the move to Ohio.

Cody's girlfriend, MacKenzie Craycraft, also testified. They live together and have been in a relationship since August 2019. MacKenzie testified that she would be able to care for the child if Cody were to receive primary custody and that her parents could watch the child when she is at work. MacKenzie testified that she works Monday through Wednesday and on weekends at a rehab facility in Ironton, Ohio. She is off on Thursdays and Fridays. She denied any drug or alcohol issues.

Caitlin testified that she and Cody had discussed the possibility of her moving to Ohio before November 2020. The conversation about moving to Dublin, Ohio, started in June 2020. Cody never opposed the move until he filed

his motion. Caitlin testified that she did not know that she had to file a motion requesting that the court allow her to move.[2]

Caitlin testified that she and her boyfriend, Tyler, have been together for four years and have an eight-month-old son together. At present, Tyler earns $850.00 to $1,000.00 per week after taxes as a forklift driver. Before they moved to Ohio, Tyler was making about $530.00 per week as a construction worker.

Caitlin testified that the parties drop off/exchange the child at a McDonald's in Chillicothe -- a little more than an hour away for Caitlin and a little under an hour for Cody. Cody's mother lives across from Caitlin in the same apartment complex and helps care for the child. Caitlin explained that she was asking the court to approve her move to Ohio and that it would create a financial hardship if she had to move back to the Greenup, Kentucky, area. Caitlin felt that it was premature to discuss what the timesharing arrangement might be when the child starts school. Caitlin testified that she and Cody had "agreed that we would wait and we would have that conversation when it got closer for her to go to school."

---

[2] Family Court Rule of Practice and Procedure 7(2)(a)(i) requires that "[b]efore a joint custodian seeks to relocate, written notice shall be filed with the court and served on the non-relocating joint custodian."

Katherine Newhouser, Cody's mother, testified. She explained that Cody had terminated his relationship with her (his mother) because he was upset "that she replaced him with Caitlin and her boyfriend." Ms. Newhouser testified that Cody had a history of depression. Ms. Newhouser testified about MacKenzie's drinking. Ms. Newhouser had to go to her residence at least twice because MacKenzie "was so obliterated." The previous July, Ms. Newhouser and her husband had gone on a family vacation with Cody, MacKenzie, and the child. According to Ms. Newhouser, "MacKenzie was drunk the entire time. She urinated on herself on the beach." Ms. Newhouser testified that she has seen MacKenzie intoxicated on other occasions and in the child's presence.

Ms. Newhouser explained that Cody and Caitlin had separated while Caitlin was still pregnant. Ms. Newhouser was the mediator between them regarding any big problem that arose. In late June 2020, Caitlin and Tyler started talking about moving to look for better employment, and Ms. Newhouser brought up the subject of the possible move to Cody. He said that he had no disagreement with the move. Ms. Newhouser testified that Cody did not express any concern with the move "until after they were here. . . . [H]e said he was okay with it until it happened."

By Order entered March 22, 2021, the trial court concluded that relocation is in child's best interest as follows in relevant part:

-6-

[Cody] has objected to [Caitlin's] moving with the child to Dublin, Ohio. [Cody] lives in South Shore, Kentucky. The parties have one child . . . who turned three in November 2020. [Cody] works for Marathon Petroleum on a tow boat and works 28 days on and 28 days off.

[Cody] wants the Court to enter an order requiring [Caitlin] to move back to this area with the child. [Cody's] parents and his uncle live in the Columbus, Ohio area. [Caitlin's] parents live in Greenup County, Kentucky. [Cody] states that if [Caitlin] is required to move back to this area then his girlfriend and her parents will be able to babysit the child when he works. [Cody's] mother lives in the same apartment complex, literally across the parking lot, from [Caitlin] and the child. [Cody] has had a falling out with his mother over her relationship with [Caitlin].

According to [Caitlin], she discussed her move with [Cody] in June, and he did not object to the move. . . . On November 11, 2020 [Caitlin] moved into the apartment. She resides there with her boyfriend of four years with whom she has a child. She moved with her boyfriend so that he could obtain a better paying job which he has been able to do. The boyfriend earns between $850.00 and $1,000.00 per week as opposed to the $530.00 per week that he was earning when they resided there.

The parties are currently dropping off and picking up at McDonald's on Main Street in Chillicothe, Ohio and they are ORDERED to continue to do so.

According to [Cody's] mother, [Cody's] girlfriend drinks a lot and [Cody] battles depression. According to Ms. Newhouser, [Cody] said he had no problem with [Caitlin's] moving in July 2020.

Based upon the foregoing, the COURT HEREBY FINDS it in the best interest of the child to allow [Caitlin] to move with the child. The COURT FINDS that [Cody] agreed to the move originally but now has changed his mind. The COURT FINDS that [Caitlin] had legitimate reasons for wanting to move out of the area and the move has been in the best interest of the parties' child.

(Emphases original.)

Cody filed a motion to alter, amend, or vacate and for specific findings. By Order entered on April 7, 2021, the court denied the motion except for an adjustment to Christmas timesharing.

Cody now appeals. He contends that the trial court abused its discretion when it permitted Caitlin to move to Dublin, Ohio, and when it failed to make specific findings with regard to the child's best interest. We address his arguments together.

Cody submits that KRS[3] 403.320 controls. We agree.

[I]f the only interest of the opposing party is to object to relocating the child, but not to alter joint decision-making, then he is seeking to have the existing visitation/timesharing arrangement changed, and need only establish that it is in the child's best interests not to relocate, which would thereby change the existing visitation/timesharing situation. . . . KRS 403.320(3) controls, which allows modification of visitation/timesharing "whenever modification would serve the best interests of the child[.]"

---

[3] Kentucky Revised Statutes.

-8-

. . . .

> Every case will present its own unique facts, and . . . must be decided in the sound discretion of the trial court.

*Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008). In *N.B. v. C.H.*, 351 S.W.3d 214, 226 (Ky. App. 2011), this Court interpreted *Pennington* as holding:

> that, between joint custodians, and absent the non-primary residential parent's motion to modify timesharing, including naming her as primary residential parent, the relocating parent always bears the burden of proving relocation is in best interests of the child.

Cody argues that the trial court's findings are insufficient. He cites *Agnich v. Tyler*, 520 S.W.3d 394 (Ky. App. 2017), which explains that in modification cases, the court "has several factors to consider in making the determination of what the best interests of a child are, which are partially listed in KRS 403.270. . . . To review the judge's decision on appeal, it is important to know what facts the judge relied on[.]" *Id.* at 398 (quoting *Anderson v. Johnson*, 350 S.W.3d 453, 455 (Ky. 2011)).

In determining the best interests of a child, we note the language and reasoning of *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008).

> The statutory guidelines of KRS 403.270 do not include a definition of the best interests of the child standard; however, KRS 403.270(2) requires the trial court to consider all relevant factors and provides a list of non-exclusive, demonstrative factors to be considered in custodial determinations.

-9-

Those statutory factors include:

> (a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;
>
> (b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;
>
> (c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;
>
> (d) The motivation of the adults participating in the custody proceeding;
>
> (e) The child's adjustment and continuing proximity to his or her home, school, and community;
>
> (f) The mental and physical health of all individuals involved[.]

KRS 403.270(2).

After our review, we are persuaded that the trial court properly considered the relevant factors in determining that the move was in the child's best interest and that its findings are sufficient. The court duly considered that Cody works 28 days on and 28 days off and that if the child were required to move back to Kentucky as Cody wants, his girlfriend and her parents would babysit when he works. The court also considered that Cody's mother lives across the parking lot from Caitlin and the child in the same apartment complex. The court found that

-10-

Caitlin had a legitimate reason for moving; *i.e.*, so that her boyfriend could obtain a better-paying job, which he did. The court noted Ms. Newhouser's testimony regarding Cody's girlfriend's drinking and the fact that Cody has battled depression. The court also found that Cody had initially agreed to the move and that he then changed his mind.

We are satisfied that the trial court carefully and appropriately exercised its discretion:

> Trial courts are . . . vested with broad discretion in matters concerning custody and visitation. In the absence of an abuse of discretion, we will not disturb a trial court's decision. The test is not whether we as an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion.

*Jones v. Livesay*, 551 S.W.3d 47, 51-52 (Ky. App. 2018) (citations omitted).

Cody's argument on appeal is largely a re-argument of his case. Although Cody presumes that his time with the child will be severely restricted when she starts school, that eventuality has yet to occur. In the meantime, Cody's timesharing with the child remains as it was before. We are satisfied from our review of the record that substantial evidence supports the trial court's decision that it is in the best interest of the parties' child to allow Caitlin to move with the child.

Finding no error or abuse of discretion, we affirm.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Tracy D. Frye | Charles L. Douglas, Jr. |
| Russell, Kentucky | Greenup, Kentucky |